IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS K. SHONTZ,               )
                                )
                Plaintiff,      )
                                )
        v.                      )        Civil Action No. 05-1637
                                )
RITE AID OF PENNSYLVANIA        )        Judge Joy Flowers Conti
INC.,                           )
                                )
                Defendant.      )


## MEMORANDUM OPINION

Pending before this court is a motion for summary judgment (Doc. No. 27) filed by

defendant Rite Aid of Pennsylvania, Inc. ("Rite Aid" or "defendant"). Plaintiff Thomas K.

Shontz ("Shontz" or "plaintiff") filed this civil action asserting two claims: a claim under

the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq. ("ADEA"), and a

claim under the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. § 954(b)

("PHRA").[1] Plaintiff, while admitting to violating Rite Aid's company policy, asserts that

fellow employees under the age of forty engaged in the same activity, yet were not subject

to disciplinary measures. Plaintiff asserts that younger, similarly situated employees were

given more favorable treatment. Because plaintiff was forty-years-old at the time that he

was disciplined, i.e., terminated for engaging in activity for which other employees were

not similarly disciplined, plaintiff claims he was discriminated against on the basis of his

age. After reviewing the record, viewing all disputed facts in plaintiff's favor and drawing

all reasonable inferences in plaintiff's favor, the court concludes that no reasonable finder

_____

[1] The standards under the ADEA and the PHRA are the same and will therefore be decided
and discussed together. See Kautz v. Met-Pro Corp., 412 F.3d 463, 465 (3d Cir. 2005).

of fact could render a verdict for plaintiff on his claims. Under those circumstances, summary judgment will be granted in favor of defendant.

## Factual Background

The factual background is derived from the undisputed evidence of record and the disputed evidence of record viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 22, 255 (1986). ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.")

In 1985, plaintiff was hired as a manager trainee by defendant. (Pl.'s Ex. A at 66.) In 1999, plaintiff was promoted to district manager for the western district of Pennsylvania. (Pl.'s Ex. B at 18-19.) In his position, plaintiff managed twenty-one Rite Aid stores. Plaintiff's immediate supervisor from October 2003 through August 2004 was Jeffrey Schilling ("Schilling"), regional vice president of Rite Aid. (Joint Statement of Undisputed Material Facts ("J.S.") ¶3.) Schilling placed a high value on loyalty and had believed that plaintiff was loyal prior to the incident that led to plaintiff's termination. (J.S. ¶6.) Schilling had previously "gone to the wall" for plaintiff earlier in plaintiff's career. (Pl.'s Ex. B at 52.) Specifically, Schilling's supervisors had expressed an interest in terminating plaintiff's employment, but Schilling believed plaintiff's performance could be "turned around." (Pl.'s Ex. B at 51-52.)

### Trade Show

In August 2004, Rite Aid had its annual trade show and supplier exhibition (the "trade show.") (J.S. ¶13.) The trade show is an event meant solely for Rite Aid employees and vendors. (Id. ¶25.) Prior to the trade show, Julie Thomas ("Thomas"), a Rite Aid

pharmacist under plaintiff's supervision, informed plaintiff that her friend, Kristine Breitenbach ("Breitenbach"), wanted an employee name badge so that Breitenbach could gain access to the trade show. (Id. ¶13.) On the final day of the trade show, plaintiff provided Thomas with the name badge of an absent Rite Aid employee, Deborah Kostolich ("Kostolich") to give to Breitenbach, a non-Rite Aid employee. (Id. ¶18.) Plaintiff admits that he expected Thomas to give the name badge to Breitenbach so that Breitenbach could gain access to the trade show. (Id. ¶19.) Breitenbach wore Kostolich's name badge credentials and was able to attend the trade show. (Id. ¶19, ¶25.)

Before giving the name badge to Thomas for Breitenbach's benefit, plaintiff did not ask Schilling for clarification regarding Rite Aid's position on providing false credentials to non-employees. Additionally, plaintiff failed to request permission to give Kostolich's name badge credentials to Breitenbach. (Id. ¶21, ¶31.) The day before the trade show, plaintiff provided Schilling's assistant with a list of employees that plaintiff recommended be permitted to attend the trade show. (Id. ¶¶22-23.) Plaintiff did not include Breitenbach's name on the list. (Id.) Plaintiff knew that friends and families of Rite Aid employees were not permitted to attend the trade show. (Id. ¶26.) Plaintiff understood that the trade show was intended to be a function meant solely for Rite Aid employees and selected vendors. (Id. ¶25.)

During the trade show, Thomas introduced Breitenbach to Schilling. (Id. ¶33.) Schilling recognized that Breitenbach was not Kostolich, as stated on her name badge. (Id. ¶34.) When questioned by Schilling, Breitenbach admitted that she was a pharmacist employed by Express Scripts and not a Rite Aid employee. (Id. ¶¶ 35, 37.) Schilling learned that plaintiff had provided Thomas with the false name badge credentials to give to

Breitenbach so that Breitenbach could attend the trade show.  (Id. ¶38.)  Plaintiff believes that Breitenbach attended past trade shows, but does not know who previously supplied her with the false credentials.  (Pl.'s Ex. A at 234-38.)  Plaintiff does not know which employee's credentials Breitenbach wore at prior trade shows.  (Id.)

Schilling believed that plaintiff's decision to supply Breitenbach with false credentials constituted dishonest or fraudulent conduct.  (J.S. ¶40.)  Upon returning to his Pittsburgh office, Schilling contacted Janet Emerson ("Emerson"), senior vice president, and Keith Lovett ("Lovett"), senior vice president of labor and human resources.  (Pl.'s Ex. B at 96-97.)  Lovett and Emerson directed Schilling to terminate plaintiff's employment.  (Id.)  Pursuant to Lovett's and Emerson's directive, Schilling terminated plaintiff's employment on August 19, 2004.  (J.S. ¶1.)  Plaintiff never informed Schilling of his age prior to the termination of his employment.  (Id. at ¶59, ¶60.)

**Plaintiff's Replacements**

To date, Rite Aid has not hired a new replacement for plaintiff's position as district manager of twenty-one Rite Aid stores.  (Id. ¶¶47-48.)  After plaintiff's termination, the remaining district managers divided plaintiff's former stores among them.  The remaining district managers included: Robert McEvoy ("McEvoy"), Jeffrey Suriano ("Suriano"), Elizabeth Naggy ("Naggy"), and David Hamstead ("Hamstead").  (Def.'s Ex. E ¶¶3-7.)  Hamstead was assigned five stores.  (Id. ¶7.)  Naggy was assigned three stores.  (Id. ¶4.)  McEvoy was assigned seven  stores.  (Id. ¶5)  Suriano was assigned six stores.  (Id. ¶6.)

At the time of plaintiff's termination, the mean (or average) age of the district managers who assumed responsibility of plaintiff's former stores was 40.7.  (Id. ¶¶4-7.)  The replacement age of the district managers at the time of plaintiff's termination was

39.7, after weighting the ages to reflect the percentage of plaintiff's stores assigned to each individual district manager.  (Id.)  The replacement age average is approximately one  year younger than plaintiff's age at the time of plaintiff's termination.  (J.S. ¶55.)  Schilling did not know plaintiff's age or whether he was over forty years of age, under forty years of age or exactly forty-years-old when he terminated plaintiff's employment, on August 19, 2004.  (Pl.'s Ex. B at 77-78, 209-10.)  Plaintiff never informed Schilling, Lovett, or Emerson that he would be forty-years-old on December 6, 2003.  (J.S. ¶¶58, 60.)

**Allegations of Favorable Treatment by Schilling**

Plaintiff alleges that, in similar situations, the following Rite Aid employees were treated more favorably then he: Thomas, Andrew Heuer ("Heuer"), Suriano, and McEvoy.  (Id. ¶¶61-89, 102-05.)  Thomas was not disciplined by Schilling for giving Breitenbach the false name badge credentials because she received permission, as well as the false name badge credentials, from plaintiff, her supervisor.  (Pl.'s Ex. B. at 139-40; Pl.'s Ex. F at 48-49.)  Schilling did not view Thomas' actions as fraudulent or dishonest. (Pl.'s Ex. B. at 139-40.)

On the night that Breitenbach attended the trade show, Heuer, a Rite Aid pharmacy development manager, gave Thomas a spare room key.  (J.S. ¶64.)  Heuer denied any prior knowledge of Breitenbach's plan to attend the trade show or that she was not a Rite Aid employee.  (Def.'s Ex. C. at 143.)  Heuer informed Schilling and Dennis Palko ("Palko"), the human resources manager, that he supplied Thomas with an extra room key because she had been forced to share a single bed with another employee as a result of a hotel error.  (Def.'s Ex. C. at 145.)  Heuer was forty-six-years old at the time of plaintiff's termination.  (J.S. ¶68.)

After a regional meeting held by Schilling on March 3, 2004, plaintiff, Bernard Krcha ("Krcha"), and Naggy, three district managers age forty and over, received disciplinary warning letters for disrespectful and disruptive behavior during the meeting. (Pl.'s Ex. B at 44-45.) Plaintiff admits that he raised his voice at Schilling. (J.S. ¶10.) Suriano participated in the same conduct as plaintiff, Krcha, and Naggy, and did not receive a disciplinary warning letter. (Pl.'s Ex. C at 42, 44, 55-56; Pl.'s Ex. D at 33-34.) Schilling referred to Suriano as one of his "young bucks." (Pl.'s Ex. C at 37.) Even though plaintiff raised his voice at Schilling during the regional meeting, he was not penalized with a pay reduction, loss of benefits, or removal of job responsibilities or duties. (J.S. ¶11.)

An anonymous complaint was made by phone which alleged that Suriano had urinated on the Baltimore Ravens' football field during the trade show. (Id. ¶70.) Suriano was investigated by Sherry Mullens ("Mullens"), a Rite Aid human resource director, for unprofessional conduct at the trade show. (Pl.'s Ex. B at 147-49.) Suriano denied urinating on the field. (J.S. ¶73.) After an independent investigation into the allegations, Mullens determined that the complaint was malicious and without merit. (Pl.'s Ex. B. at 147, 152-53.)

Plaintiff alleges that McEvoy received a higher salary as a district manager and was, therefore, treated more favorably than him. Plaintiff, however, does not know McEvoy's salary. (Id. ¶¶102-03.) Plaintiff did not know whether Schilling, his former supervisor, had the authority to set salaries. (Id. ¶104.) Schilling did not have the authority to set district managers' salaries. (Pl.'s Ex. B at 193.)

**Allegations of Less Favorable Treatment by Schilling**

Plaintiff alleges that two employees, Krcha and Michael Gironda ("Gironda") are similarly situated to him and were also treated less favorably than their younger co-workers because of their ages. Krcha, a former district manager, voluntarily retired at the age of seventy-three. (J.S. ¶¶92-93.) Schilling asked Krcha when he would retire on approximately six separate occasions because Schilling had promised Krcha's position to his good friend, McEvoy. (Pl.'s Ex. C at 9-10; J.S. ¶¶90-91.)

Gironda, a Rite Aid loss prevention manager, informed Schilling that he was interested in Krcha's vacated district manager position. (J.S. ¶94.) Gironda was fifty-one-years-old at the time he applied for the position. (Id. ¶98.) Schilling hired McEvoy, a younger candidate, for the vacated district manager position. (Id. ¶95.) Gironda believed that he was not hired to fill the vacated position because of his age. (Id. ¶96.) Schilling referred to him as "old school." (Id.) Gironda admited that he has referred to himself as "old school" numerous times during his employment with Rite Aid. (Def.'s Ex. J at 3-8.) Gironda further admits that he has no evidence, proof, or knowledge to support an allegation that he was not chosen for the position because of his age. (J.S. ¶100.) Gironda never formally complained about age discrimination to his supervisors at Rite Aid and continues to work for Rite Aid.. (Id. ¶99.)

### Procedural Background

On May 25, 2005, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Pennsylvania Human Relations Commission, alleging age discrimination in his discharge. (Id. ¶108) On August 30, 2005, the EEOC issued a Dismissal and Notice of Rights. Plaintiff timely commenced this

lawsuit.  Rite Aid filed the instant motion for summary judgment alleging plaintiff failed to establish a prima facie case of age discrimination.

## Standard of Review

Under Federal Rule of Civil Procedure 56(c), all inferences based upon the available documents shall be drawn in favor of the nonmoving party.  FED. R. CIV. P. 56(c).  If the "pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law," summary judgment may be granted.  Id.  The mere existence of disputed facts is not sufficient to defeat a motion for summary judgment as a genuine issue of material fact must exist for the court to deny the summary judgment motion.  Moorer v. Verizon Communications, Inc., No. 03-cv-01265, 2005 U.S. Dist. LEXIS 39783 (W.D. Pa. Oct. 27, 2005) aff'd, 2006 U.S. App. LEXIS 30037 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson, 477 U.S. at 249.  Any material or evidence that would be admissible or usable at trial may be considered by the court when judging the merits of the motion for summary judgment.  Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993),  Pollack v. City of Newark, 147 Supp. 35, 39 (D.N.J. 1956), aff'd, 249 F.2d 543 (3d Cir. 1957), cert. denied, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled

to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

## Discussion

### I. *Elements of Claims at Issue and Burdens of Proof*

The ADEA and PHRA prohibit an employer from discharging or discriminating against any individual employee on the basis of the employee's age if the employee is over forty-years-old. 29 U.S.C. §§ 623(a), 631(a); 43 PA. CONS. STAT. §§ 954(h), 955(a). Age discrimination claims filed under the ADEA and the PHRA will be analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, (1973). It is well settled that courts use the McDonnelll Douglas burden-shiftng framework to analyze disparate treatment claims. See Simpson v. Kay Jewelers, Division of Sterling Inc., 142 F.3d 639, 645 (3d. Cir. 1998).

In McDonnell Douglas, the Supreme Court developed the now familiar burden-shifting framework for courts to utilize as a tool in analyzing disparate treatment claims. The McDonnell Douglas framework requires a plaintiff alleging a violation of the ADEA to first establish a prima facie case of discrimination. The prima facie case, the elements of which depend upon the kind of claim the plaintiff is alleging, "eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); see Id. at n.6. In so doing, "the prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" Id.

If the plaintiff successfully demonstrates a prima facie case of discrimination, the burden of production (but not the burden of persuasion) shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. Simpson v. Kay Jewelers, 142 F.3d 639, 644 n.5 (3d Cir. 1998). The burden on the defendant at this junction is "relatively light," and the defendant can satisfy this burden "by introducing evidence which, *taken as true*, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision. . . . " Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (emphasis added)(citations omitted).

Once the defendant offers a legitimate nondiscriminatory reason for the challenged conduct at issue, "'the McDonnell Douglas framework - with its presumptions and burdens' - disappear[s], . . . and the sole remaining issue [is] 'discrimination *vel non*,'. . . ." Reeves v. Sanderson Plumbing Products., Inc., 530 U.S. 133 (2000) (citations omitted). The plaintiff, thus, has the ultimate burden of proving by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination. Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999).

A.     Prima Facie Case

Under this framework, a plaintiff must first establish a prima facie case of age discrimination. Hicks v. Tech Industries, 512 F.Supp.2d 338, 346 (W.D.Pa. 2007). To establish a prima facie case of age discrimination, the plaintiff must show that: (1) he is age forty or older; (2) his job performance met the employer's legitimate expectations; (3) he was terminated from his position; and (4) he was replaced by a sufficiently younger person or a younger, similarly situated employee was treated more favorably such that a

reasonable inference of age discrimination was created.  Simpson, 142 F.3d at 644; see

Steward v. Sears Roebuck & Co., 231 Fed.Appx. 201, 210 n.5 (3d Cir. 2007)  (If a prima

facie discrimination case had not been established, the court would have considered

"whether the evidence that other similarly situated employees, who were significantly

younger than [the plaintiff] were treated more favorably, was . . . sufficient to establish the

fourth element of [the plaintiff's]  prima facie case.").

Both parties are in agreement that plaintiff fulfilled three of the four elements

required under Simpson to establish a prima facie age discrimination case.  Plaintiff is over

forty, was qualified for his position at the time of termination, and was discharged from his

job.  Defendant, however, asserts that plaintiff failed to adduce sufficient evidence to

establish the fourth element of a prima facie age discrimination case because he was not

replaced by a sufficiently younger employee.

B.      Age of Replacements

Based upon their respective ages, the age of the plaintiff's replacements at the time

of plaintiff's termination was 39.7, when weighted to reflect the percentage of plaintiff's

stores assigned to each individual district manager.  The "replacement age" is

approximately one year younger than plaintiff at the time of plaintiff's termination.  The

mean age of the replacements, without regard to weighting the ages relative to the number

of stores assigned to each district manager, was 40.7, approximately seven months older

than plaintiff.

While there is no bright-line rule in determining "sufficient" age difference

between a discharged employee and his replacement, case law supports that a one year age

difference fails to fulfill the "sufficiently younger" requirement.  Hicks, 512 F.Supp.2d at

11

347 ("Although there is no bright-line rule as to what constitutes a 'sufficient' age difference, this two-year difference alone is simply too insignificant to raise a reasonable inference of age discrimination."); see, e.g., Bernard v. Bethenergy Mines, Inc., 837 F.Supp. 714, 717 (W.D.Pa. 1993)(seven-year and four-year age difference insufficient to show age discrimination); aff'd, 31 F.3d 1170(3d Cir. 1994); see also Narin v. Lower Merion Sch.Dist., 206 F.3d 323,333 n.9 (3d Cir. 2000) (age difference between 55-year-old employee and 49-year-old and 54-year-old replacements was insufficient to establish discrimination).

C.      Younger Employees' Treatment

Although plaintiff failed to adduce evidence that a sufficiently younger employee replaced him after his termination, plaintiff argues that he can satisfy the fourth element by showing that younger similarly situated employees were treated more favorably, thereby creating a reasonable inference of age discrimination. Plaintiff asserts that he has satisfied the fourth element by showing that Thomas, Hutchinson, Heuer, McEvoy, and Suriano, all younger, similarly situated employees, were more favorably treated.

Plaintiff contends that he was similarly situated with younger employees, Thomas, McEvoy, and Suriano, who were treated more favorably than him because of his age. "In determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action." Simpson, 142 F.3d at 647 (citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509 (3d Cir. 1993)). To determine whether disparate treatment occurred, each comparator's level of participation in the situation must be considered and judged under the same criteria as

plaintiff. Schilling believed that plaintiff's decision to give Breitenbach an employee's name badge credentials constituted dishonest or fraudulent conduct and terminated plaintiff's employment at the direction of Rite Aid supervisors. Heuer and Thomas were both involved in the events resulting in an employee name badge being provided to a non-employee. Their level of participation and culpability, however, are not the same as plaintiff's participation or culpability and preclude them from being considered good comparators.

Based upon the evidence of record, Heuer did not know that Breitenbach attended the trade show, nor did he have knowledge that she would be the recipient of the room key he gave to Thomas. He, therefore, did not knowingly perform or help another employee engage in fraudulent or dishonest conduct. Plaintiff, however, had full knowledge of the Rite Aid policy regarding non-employee attendance at the trade show. Plaintiff knew that Breitenbach would use the name badge to attend the event. Plaintiff is not similarly situated with Heuer and comparisons between them, therefore, are irrelevant to establish the fourth element.

Thomas gave the employee name badge that she received from plaintiff, her supervisor, to Breitenbach. Even though Thomas directly participated in the conduct that violated Rite Aid policy, she is not similarly situated with plaintiff. Plaintiff is Thomas' supervisor. Thomas sought and received permission from her supervisor to give an employee name badge to Breitenbach. Under those circumstances, Thomas's actions were not dishonest or fraudulent. Plaintiff did not seek approval from his supervisor to supply Breitenbach with the name badge and failed to include her on the list of attendees. Based upon the foregoing, plaintiff is not similarly situated with Thomas.

13

Plaintiff claims that Suriano, a younger district manager, was treated more favorably when Suriano was not disciplined for his conduct at a regional meeting or for urinating on the football field at the trade show. Suriano participated in the heated exchanged between Schilling and other employees at the March 3, 2004, regional meeting. Plaintiff and two other district managers over the age of forty received disciplinary letters and Suriano did not receive a disciplinary letter. Plaintiff alleges that Schilling's failure to give Suriano a disciplinary letter shows age discrimination. Plaintiff, however, failed to provide the ages of the other employees who participated in the meeting. Plaintiff also failed to show whether or not these subject employees received disciplinary letters. Plaintiff can not choose one comparator who did not receive the same adverse treatment as evidence of discrimination without taking into consideration the circumstances surrounding the adverse treatment. Simpson, 142 F.3d at 645-47. (Reasoning that evidence can not be viewed in a vacuum, and therefore holding that a decision adversely affecting an older employee does not become a discriminatory decision merely because one younger employee is differently treated.) Plaintiff failed to provide sufficient evidence to show more favorable treatment based upon age discrimination in this instance.

Suriano was accused of urinating on a football field during the trade show. Suriano's behavior would be a violation of Rite Aid employee policy. Although Suriano was accused of a violation, he vigorously denied the accusations. After an investigation by human resources, the accusations against Suriano were found to be without merit. In contrast, plaintiff admitted to violating Rite Aid's policy with respect to trade show attendance by non-employees. Plaintiff's clear admission of culpability sharply contrasts the allegations levied against Suriano. Based upon the evidence in the record, plaintiff

received different treatment based upon his admitted violation of company policy in contrast to Suriano, who denied the accusations and was found to be innocent of any violation. Suriano and plaintiff are not similarly situated under the facts of the case and were treated differently based upon their different conduct. Plaintiff did not provide sufficient direct or circumstantial evidence to fulfill the fourth element of a prima facie age discrimination case. Because there is insufficient evidence for a reasonable jury to return a verdict for plaintiff on these claims, summary judgment must be granted in favor of defendant.

## II.     Failure to Establish Pretext

Assuming that plaintiff had successfully established a prima facie age discrimination case, the burden would shift to defendant to articulate a legitimate, nondiscriminatory reason for plaintiff's termination. Hicks, 512 F.Supp.2d at 346. Plaintiff admittedly violated Rite Aid policy by giving employee name badge credentials to a non-employee. Defendant's articulated reason for termination is legitimate and supported by plaintiff's own admission of conduct in violation of Rite Aid employee policy. After, as here, defendant has met this minimal burden, plaintiff must prove by a preponderance of the evidence that defendant's articulated reason was pretextual. Id. at 346-47.

Once an employer has stated a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff in order to survive summary judgment must meet the two-prong test articulated by the United States Court of Appeals for the Third Circuit in Fuentes:

> [T]he plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Id. at 764.

## A. Prong One

A plaintiff must submit evidence that could cause a reasonable fact finder to discredit the employer's articulated reason for the adverse employment action in order to overcome summary judgment and bring her case to trial. To discredit the employer's articulated reason, the plaintiff does not need to produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, Sempier v. Johnson & Higgins, 45 F.3d 724, 764 (3d Cir. 1995), nor produce additional evidence beyond his prima facie case. Fuentes, 32 F.3d at 764. The plaintiff must, however, demonstrate such:

> "weaknesses, implausibilities, inconsistencies, incoherencies [sic], or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them 'unworthy of credence'" and hence infer that the proffered nondiscriminatory reason "did not actually motivate" the employer's action. [Fuentes, 32 F.3d] at 764-65 (quoting [Ezold, 983 F.2d at 531]).

Simpson, 142 F.3d 639 at 644. The question asked in prong one of the Fuentes test is not whether the employer made the best, or even a sound, business decision; it is whether the real reason for the adverse result suffered by the plaintiff is discrimination. Keller v. ORIX Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997).

An employment decision that would create a problem under prong one will likely turn on whether the stated reason for termination is so implausible that a fact finder could

not believe it to worthy of credence.  For example, in <u>Brewer v. Quaker State Oil Refining</u> <u>Corp.</u>, 72 F.3d 326 (3d Cir. 1995), the plaintiff was fired due to deficient sales performance.  The evidence of record, however, disclosed that the plaintiff received a bonus three months prior to his termination and that he was the only sales employee in his region to have received such a bonus.  The court held that, where the primary measure of the employee's performance was his sales, and where he was the leading salesperson in the region, the employer's stated reason for his termination was "contradictory to [its] admission that the most important standard of job performance is sales."  <u>Id.</u> at 332. According to the court, "[a] factfinder could find it implausible that Quaker State would have fired Brewer for such deficiencies when he was successful in the sole area identified by Quaker State's own performance incentive program - sales."  <u>Id.</u>

    <u>Sempier</u> is another case in which an employer stated the plaintiff was terminated because of poor performance causing the company to restructure the nature of his responsibilities.  The evidence of record, however, disclosed that (1) the plaintiff never received any unfavorable criticism that his performance was poor or inadequate; and (2) the employer failed to produce any other evidence of poor performance or to make specific allegations of the plaintiff's deficiencies.  <u>Sempier</u>, 45 F.3d at 731-33.  Thus, there was evidence on the record that a reasonable factfinder could conclude that the reason given in <u>Sempier</u> by the employer was a pretext for age discrimination.  <u>Id.</u> at 732-33.

    In this case, plaintiff contends he was terminated because of his age and that similarly situated older employees were treated less favorably than younger employees. Despite plaintiff's contentions, it is clear from the evidence of record that the basis for

plaintiff's termination was his violation of Rite Aid company policy. There is no dispute that plaintiff violated company policy.

The court finds that plaintiff failed to present sufficient evidence to allow a fact finder to conclude reasonably that "a discriminatory reason more likely motivated the employer" than the employer's proffered explanation that plaintiff was terminated because he violated Rite Aid company policy. Burdine, 450 U.S. at 256. Plaintiff did not succeed in showing by evidence of record that the employer's proffered reason – he was violated company policy – "is unworthy of credence." Id. Plaintiff presented insufficient evidence to demonstrate weaknesses, implausibilities, etc., in defendant's proffered reason to find it "unworthy of credence." Plaintiff cannot satisfy his burden of proving that defendant's reason was pretextual under the first prong of the Fuentes test.

### B. Prong Two

The court must next examine the second prong of the Fuentes framework to determine if plaintiff presented sufficient evidence of pretext. To show that discrimination was more likely than not a cause for the employer's adverse actions, a plaintiff must point to evidence with sufficient probative force that could allow a factfinder to conclude by a preponderance of the evidence that the protected characteristic was a motivating or determinative factor in the employment decision. Simpson, 142 F.3d at 644-45. Relevant evidence that could be relied on in the evaluation of this prong includes: (1) whether the employer has previously discriminated against the plaintiff, (2) whether the employer has discriminated against other people within the plaintiff's protected class or within another protected class, or (3) whether the employer has treated more favorably similarly situated persons not within the protected class. Id. at 645.

### (1)  Evidence of previous discrimination against plaintiff

Although plaintiff mentions several instances when Rite Aid treated other employees more or less favorably, plaintiff made no specific allegation of previous discrimination against plaintiff.  Based upon a review of the evidence of record, there is no basis on which a reasonable jury could find in favor of plaintiff with respect to this factor.

### (2)  Whether the employer has discriminated against other people within plaintiff's protected class or another protected class

Plaintiff argues that similarly situated employees were treated less favorably than younger employees on three separate occasions.  Plaintiff alleges that Krcha, Nagy and he were disciplined for disrespectful and disruptive behavior during a regional meeting.  Plaintiff further alleges that Suriano was not disciplined for his participation in the heated exchange at the regional meeting.  Plaintiff, however, admits that he raised his voice at his supervisor.  Plaintiff also asserts that Krcha was asked on six separate occasions when he planned to retire.  Plaintiff, however, acknowledges that Krcha was asked about his dates of retirement because Schilling promised Krcha's position to a friend.  Finally, plaintiff alleges that Gironda was treated less favorably when Schilling referred to Gironda as "old school."  Gironda admits to calling himself "old school" and has never complained about age discrimination to Rite Aid.  Indeed, Gironda is still employed by Rite Aid.

There is no dispute that Schilling, as a Rite Aid supervisor, asked Krcha about his intended date of retirement.  There is no dispute that Schilling did so because he had promised Krcha's position to a friend.  There is no evidence that Schilling's inquiries were anything more than an attempt to secure a position for his friend.  The record is devoid of any evidence that Schilling's questions were posed as a result of Krcha's age.

Next, plaintiff's allegations relating to Gironda are unavailing. Stray comments, like that made by Schilling about Gironda, are generally not sufficient standing alone to warrant a finding of pretext. See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101 (3d Cir. 1997). In previous decisions, the United States Court of Appeals for the Third Circuit established three factors to determine whether a stray remark is probative of discrimination: (1) the relationship of the speaker to the employee and within the corporate hierarchy; (2) the temporal proximity of the statement to the adverse employment decision; and (3) the purpose and content of the statement. Keller v. Orix Credit Alliance, Inc., 130 F.3d at 1112; Ryder v. Westinghouse Electric Corporation, 128 F.3d 128, 133 (3d Cir. 1997). These factors must be considered *in toto* in light of the nature and context in which the comment was made. Keller, 130 F.3d at 1112.

The Keller decision, which specifically addressed a comment made by a decisionmaker with respect to the second prong of the Fuentes test, is illustrative of this premise.[2] In Keller, the plaintiff alleging age discrimination offered evidence that his immediate superior, who ultimately made the decision to terminate Keller, remarked to him: "*If you are getting too old for the job*, maybe you should hire one or two *young* bankers." Id. at 1111 (emphasis in original). The court of appeals began its analysis of the comment by stating the following:

_____

[2] Keller was an *in banc* decision of the United States Court of Appeals for the Third Circuit, giving the opinion even greater precedential value than a decision handed down by a three-judge panel. See Bolden v. Southeastern Pennsylvania Transp. Authority, 953 F.2d 807, 813 (3d Cir. 1991) (in banc panel not bound by prior precedents of three-judge panels, but rather only by principles of stare decisis); Mennen Co. v. Atlantic Mut. Ins. Co., 147 F.3d 287, 294 n.9 (3d Cir. 1998) (only an in banc decision can overturn a prior three-judge panel's opinion).

> [The supervisor's] alleged words certainly constitute evidence from which a reasonable factfinder could draw an *inference* of age-based animus, but *we do not think that these words alone could reasonably be viewed as sufficient to prove by a preponderance of the evidence* that age was a determinative cause of Keller's subsequent termination.

Id. at 1112 (emphasis added). The court of appeals determined that the conversation took place four or five months prior to the time the decisionmaker decided to terminate Keller, and the comment did not refer to the specific employment question whether Keller should be terminated. Id. at 1112. Based upon this finding, the court of appeals determined that the comment, standing alone, lacked the probative force to survive summary judgment. See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101 (3d Cir. 1997).

The court's analysis here is similar to the court's decision in Keller. There is no evidence about the timing of when Schilling called Gironda "old school" and the record is devoid of any explanation regarding why the comment was made. The record is clear, however, that Gironda admitted to calling himself "old school" and never complained that calling him "old school" was discriminatory in nature. Gironda never reported the name calling to Rite Aid and is still employed by Rite Aid. This court cannot conclude that this stray comment, without more, is evidence of previous age discrimination.

With respect to the heated exchange at a regional meeting, plaintiff contends that Suriano was not disciplined for his participation in the heated exchange. Plaintiff contends that Krcha, Nagy and he were all disciplined for their participation in the heated exchange because each of them is older than Suriano. Upon review of the record, this court cannot agree. As discussed previously, plaintiff failed to adduce evidence with respect to the ages of all individuals involved in the heated exchange. Likewise, plaintiff failed to adduce

evidence relating to which employees were and were not disciplined. This court is unable to conclude based on this record, that defendant's failure to discipline Suriano for his behavior is evidence that plaintiff, Krcha and Naggy suffered discrimination at the hands of Rite Aid.

On the record before the court, plaintiff cannot show that defendant discriminated against other employees on the basis of age because plaintiff did not adduce sufficient evidence that the defendant discriminated against other employees at all. Based upon the undisputed evidence of record, viewing all disputed facts in favor of plaintiff and drawing all inferences in favor of plaintiff, the court concludes a reasonable jury could not find in favor of plaintiff with respect to this factor.

### (3) Whether the employer treated more favorably similarly situated persons not within the protected class

The court cannot find sufficient evidence in the record which would enable a reasonable jury to find in favor of plaintiff with respect to the argument that defendant treated plaintiff differently than other employees not within the protected class. Plaintiff contends that younger employees who were similarly situated as plaintiff were not disciplined for engaging in the same or similar behavior as plaintiff.

In the instant matter, younger employees Heuer and Thomas were involved in the circumstances leading to plaintiff's termination but the nature of their involvement was drastically different than plaintiff's actions. As was previously discussed, Heuer had no idea that Breitenbach was the ultimate recipient of the key he gave to Thomas. He gave the key to Thomas to help a fellow colleague with lodging difficulties. He had no knowledge that the room would be impermissibly used by Breitenbach.

With respect to Thomas, Thomas asked her supervisor, plaintiff, for permission to give an employee name badge to a non-employee. Plaintiff gave Thomas permission to provide the name badge to Breitenbach.

Plaintiff's allegations relating to Suriano, likewise, are to no avail. Rite Aid managers investigated allegations that Suriano engaged in behavior that violated Rite Aid company policy. After the investigation, Suriao was cleared of any wrongdoing. This situation does not compare with plaintiff's admitted violation of company policy. Each of the younger employees engaged in behavior which is substantially different than that engaged in by plaintiff.

Based upon the evidence of record, plaintiff admittedly gave the name badge credentials of a Rite Aid employee to a non-employee in violation of Rite Aid's policy. Plaintiff knew that only employees and specified vendors were allowed to attend the trade show. Defendant's reason for terminating plaintiff was his dishonest and fraudulent conduct in violation of Rite Aid's policy. Plaintiff alleges that other employees have given employee name badges to Breitenbach, a non-employee. Plaintiff, however, did not know who previously supplied Breitenbach with the false credentials and did not know which employee's credentials Breitenbach wore at prior trade shows. Witness testimony only supports that Breitenbach previously worked at Rite Aid and attended previous trade shows. These minimal facts do not establish sufficient direct or circumstantial evidence from which a fact finder could reasonably disbelieve Rite Aid's reason for termination or that it is more likely than not that Rite Aid's decision was motivated by invidious discrimination evidence. Id. at 764.

If plaintiff had adduced sufficient evidence to support a prima facie case, and defendant offered a legitimate, non-discriminatory reason for plaintiff's termination, the plaintiff must meet the requirements of one of the two prongs of the <u>Fuentes</u> test to survive a motion for summary judgment. Plaintiff has not provided evidence sufficient to discredit defendant's proffered reasons or to permit the inference that discrimination was more likely than not a motivating or determinative cause for the discharge. Plaintiff did not adduce sufficient evidence to survive defendant's summary judgment motion.

## Conclusion

Plaintiff failed to present sufficient evidence to support a prima facie case of age discrimination with respect to his termination from his employment with Rite Aid. Based upon the undisputed evidence of record, viewing all disputed facts in favor of plaintiff and drawing all reasonable inferences in favor of plaintiff, this court holds that a reasonable jury could not render a verdict in favor plaintiff with respect to his claims of age discrimination under the ADEA and the PHRA. Plaintiff also failed to present sufficient evidence to show that defendant's reason for discharging him from his position was a pretext for discrimination. Defendant's decision to terminate plaintiff was based upon plaintiff's violation of Rite Aid policy. This is clearly supported by plaintiff's own admission that he provided a non-employee with an employee name badge thereby knowingly violating Rite Aid's policy and there is not sufficient evidence adduced to show the reason for the termination was pretextual. Summary judgment must be granted in favor of defendant with respect to plaintiff's claims of employment discrimination on the basis of age.

## ORDER

**AND NOW**, this 24th day of March, 2008, upon consideration of the parties'

arguments and supporting documents, **IT IS ORDERED** that defendant's motion for

summary judgment (Doc. No. 27) is **GRANTED**.


By the court:


 /s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge


cc:  Counsel of record